**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CRAIG DZIEKAN,** | : | **No. 3:03cv1486(WWE)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICK GAYNOR and CITY OF MERIDEN,** | : | |
| **Defendants.** | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action arises from defendant Patrick Gaynor's shooting of a dog owned by plaintiff Craig Dziekan. Plaintiff alleges violation of his substantive due process and Fourth Amendment rights under the United States Constitution (counts three and four). He also asserts that defendants are liable for negligent and intentional infliction of emotional distress (counts one and five). Plaintiff has withdrawn his Fourteenth Amendment takings claim (count two), and his claim of negligent supervision (count six).

Defendants Gaynor and the city of Meriden have moved for summary judgment as a matter of law. For the following reasons, defendants' motion will be granted.

Background

Plaintiff and defendants have submitted statements of facts and have attached evidentiary materials, including exhibits and affidavits. These submissions reveal that the following facts are undisputed.

Plaintiff is a resident of the city of Meriden. At the time of the incident, he owned a Louisiana Catahula Leopard dog named Springer, weighing 55 to 60 pounds. He also owned a Neopolitan Mastiff named Tearing. Defendant Patrick Gaynor was a police officer with the city of Meriden.

On May 3, 2003, plaintiff was salvaging slate at the site of an old silver factory that was known to be a site of drug activity. Plaintiff was accompanied by his son, a friend and his two dogs, Springer and Tearing.

On that day, defendant Officer Gaynor, who was then off-duty, noticed a vehicle toward the rear of a dirt lot, which is where the road to the old silver factory commences. Defendant Gaynor parked his truck and walked into a clearing where he observed plaintiff and his truck. Springer was unleashed and running in a circular formation. Defendant Gaynor yelled to plaintiff to call the dog back. Shortly thereafter, defendant Gaynor shot the dog, which died as a result of the gunshot wounds.

The parties dispute whether defendant identified himself as a police officer when he first encountered plaintiff, and whether Springer was charging at defendant or was running in circles when the shots were fired. They also differ in their approximations of the distances involved.

Defendant Gaynor claims that the dog was charging at him with its mouth open, and that plaintiff made no effort to control the

charging dog. Defendant Gaynor asserts that he discharged his gun when the dog was six feet away from him.

Plaintiff's deposition testimony reflects the following version of facts. When plaintiff first observed defendant Gaynor in the clearing, plaintiff was approximately 60 feet away from defendant, and Springer was approximately 30 feet away from defendant. After Springer sensed defendant, he began to bark and run in circles, coming within approximately fifteen feet of defendant. Defendant yelled, "Get your dog! Get your dog!" Plaintiff answered, "I will. I will. They don't bite." Defendant Gaynor appeared threatened by the dog. When defendant discharged his weapon, Springer was running in circles approximately fifteen feet from him. The whole incident occurred in approximately five seconds. For purposes of ruling on this motion, the Court will take plaintiff's version of the facts as true.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence

of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Substantive Due Process

Defendants argue that plaintiff's substantive due process claim should be dismissed because the conduct at issue fails to "shock the conscience." Alternatively, defendants argue that plaintiff's substantive due process is improper because the Fourth Amendment provides an explicit source of protection against the alleged misconduct.

Where a constitutional amendment provides an explicit textual source of protection against certain government misconduct, that amendment is the guide for analysis of the claim

rather than the generalized notion of substantive due process. Albright v. Oliver, 510 U.S. 266, 273 (1994); Graham v. Connor, 490 U.S. 386, 395 (1989).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." Courts have consistently recognized that a law enforcement officer's killing of a pet dog constitutes a destruction of property and therefore a seizure under the Fourth Amendment. San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005); See also Altman v. City of High Point, 330 F.3d 194, 205 (4th Cir. 2003)(citing cases and analyzing Fourth Amendment law). Plaintiff provides no argument that his allegations of the substantive due process violation are not already covered by the Fourth Amendment claim. Accordingly, the court will grant the defendants' motion for summary judgment on the substantive due process claim. See Andrews v. City of West Branch, 2004WL2808385 n.1 (N.D. Iowa 2004)(where officer killed pet dog, substantive due process claim was not warranted since Fourth Amendment provided explicit protection against unreasonable seizure).

Fourth Amendment

Defendants assert that summary judgment is appropriate on the Fourth Amendment claim, arguing that defendant Gaynor's shooting of the dog was reasonable under the circumstances.

The Fourth Amendment's reasonableness inquiry requires a balancing of the nature and quality of the intrusion on the plaintiff's Fourth Amendment rights against the countervailing government interest at stake. Graham, 490 U.S. at 396. As Graham elaborates, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 395.

The government retains a strong interest in allowing law enforcement officers to protect themselves and the citizenry from animal attacks. Altman, 330 F.3d at 205. Thus, courts have generally held that no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat. See Altman, 330 F.3d at 206 (officers reasonably shot and killed dogs that posed danger, including Rottweiller known to have previously attacked individuals in neighborhood, aggressive pack of dogs

that attacked an officer, and Pitbull mix that displayed aggressive behavior toward a meter reader); Hatch v. Grosinger, 2003WL1610778 (D.Minn. 2003) (no unreasonable seizure where dog had exhibited threatening behavior).  Similarly, in Warboys v. Officer Proulx, this Court held that "[a]n officer who encounters a 90- to 100-pound pit bull dog--a dog which is demonstrably not able to be restrained by its owner or guardian and which is approaching the officer at a rate of 6 feet per second and is at a distance of no more than ten feet--does not act unreasonably in shooting the dog to protect himself and his canine companion." 303 F.Supp.2d 111, 118 (D.Conn. 2004)

In contrast, courts have found that the killing of a pet dog by law enforcement officers constituted an unreasonable seizure where the dog posed no imminent danger.  For example, it was unreasonable for an officer to shoot and kill a dog that was off a leash but stationary in a parking lot, and the owner had screamed for the officer not to shoot her dog.  Brown v. Muhlenberg Township, 269 F.3d 205, 210-211 (3d Cir. 2001); see also Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994)(summary judgment precluded where plaintiff dog owners averred that officers killed dog that was standing still in their yard).  The Ninth Circuit recently held that law enforcement officers' killing of guard dogs in the yards of two residences while executing search warrants was an intrusion on Fourth Amendment

rights so severe as to constitute an unreasonable seizure.  San Jose Charter of the Hells Angels Motorcycle Club, 402 F.3d at 975.  In that case, the law enforcement officers had a week to plan the execution of the entry and knew about the presence of the dogs.  However, they developed no plan to control the dogs other than to shoot them.  Although the governmental interest in safety might have provided a sound justification for the intrusion had the officers been surprised by the dogs, the officers knew or should have known that the Fourth Amendment requires officers to avoid more than necessary intrusion to enforce a search warrant.  Id. at 977.

Even construing the inferences of fact most favorably to the plaintiff, the facts of the instant case are most closely aligned with the decisions holding that seizure was reasonable in light of the imminent danger posed by the canine.  Here, a 55- to 60-pound dog was shot approximately fifteen feet from defendant.  Plaintiff indicated that the whole incident took about five seconds, and that Springer was approximately 30 feet away from defendant when plaintiff first observed defendant.  Accordingly, Springer had advanced toward defendant at a distance of approximately fifteen feet in five seconds.  Thus, Springer would have been traveling at a rate of three feet per second if running

in a straight line.[1] Springer was in all likelihood traveling at an even faster rate since plaintiff testified that the dog had been running in a circular pattern. However, assuming the slower rate of approximately three feet per second, Springer would have reached defendant in approximately five seconds. Accordingly, this situation called for split-second decision-making.

Based on these circumstances, the Court finds defendant could have reasonably assumed that the dog posed an imminent threat to his safety and, therefore, his conduct did not constitute an unreasonable seizure. Defendant had heard from plaintiff that the dog would not bite, but he had no way to ascertain the truth of that representation within the time period at issue. Under such circumstances, the law does not require the officer to wait until the approaching animal is within biting distance or is leaping at him before taking protective action. Warboys, 303 F.Supp.2d at 118. In light of the important interest in the defendant's self-protection, and the split-second decision-making required, the seizure was not an unreasonable intrusion on plaintiff's Fourth Amendment rights. Therefore, summary judgment in favor of defendants is appropriate on the Fourth Amendment claim.

---

[1]To calculate average speed, one divides the distance traveled by the time it took to travel that distance. Warboys, 305 F.Supp.2d at 116 n.6.

Qualified Immunity

Alternatively, summary judgment is appropriate based on the doctrine of qualified immunity. Qualified immunity "looks to the reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct." Stephenson v. Doe, 332 F.3d 68, 80 n.15 (2d Cir. 2003). Thus, qualified immunity shields law enforcement officers from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable person would have known. Saucier v. Katz, 533 U.S. 194 (2001). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 353, 341 (1986).

In the first stage of the qualified immunity analysis, the court must consider whether the facts, taken in a light most favorable to the plaintiff, could show a constitutional violation. Cowan v. Breen, 352 F.3d 756, 760 (2d Cir. 2003). If so, the court must determine whether the right in question was clearly established at the time the violation occurred. Saucier, 533 U.S. at 201.

In determining whether a right is clearly established, the court considers whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted. Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002). Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205. However, qualified immunity applies if the officer's mistake as to what the law requires is reasonable. Id. Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. Malley, 475 U.S. at 341. Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

In this instance, the alleged facts could show a Fourth Amendment seizure based on defendant Gaynor's killing of the plaintiff's dog. However, reasonably competent officers could disagree as to the appropriate course of conduct when faced with the potential harm posed by an unleashed 55- to 60-pound dog running in circles within approximately 15 feet of an officer.

As discussed previously, case law reveals that no Fourth Amendment violation occurs where a law enforcement officer kills a dog that has posed an imminent threat to the officer or citizenry. Accordingly, defendant Gaynor was objectively reasonable in his belief that his actions would not violate clearly established law. Accordingly, summary judgment in favor of defendants is also appropriate on this alternative ground.

State Law Claims

Plaintiff's remaining counts against defendants for intentional and negligent infliction of emotional distress are based on state law. Having dismissed all of the federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

## Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment [doc. #24] is GRANTED as to the Fourth Amendment claim.

The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law intentional and negligent infliction of emotional distress claims, which claims are dismissed without prejudice.

The clerk is instructed to enter judgment in favor of defendants and to close this case.

SO ORDERED.

_________________________
Warren W. Eginton
Senior United States District Judge

Dated the __ day of June in Bridgeport, Connecticut.